[No. 20834.   Department Two.   December 22, 1927.]

## THE STATE OF WASHINGTON, *Respondent,* v. PHINEUS SAFFRON, *Appellant.*[1]

[1] INSANE PERSONS (19, 21)—DUE PROCESS OF LAW—ACQUITTAL ON GROUND OF INSANITY—IMPRISONMENT. Under Rem. Comp. Stat., § 2174, providing that accused, interposing a defense of insanity, shall file a plea setting up (1) his insanity at the time of the offense, (2) whether the same still exists, and (3) whether he has become sane before the trial, and Id., § 2175, requiring the jury to determine all those issues and also (4) whether accused is liable to a recurrence to insanity and is unsafe to be at large, the accused, by raising such issues, is accorded a full and fair trial on all of them, and there is no denial of due process in his commitment to the insane ward of the penitentiary, without any further hearing, upon his being found insane when the offense was committed and sane at the time of the trial, but liable to a recurrence and unsafe to be at large.

[2] SAME (22)—CONFINEMENT IN PENITENTIARY—APPLICATION FOR DISCHARGE. The fact that Rem. Comp. Stat., § 6970 requires a physician's certificate that a prisoner in the insane ward has become sane since his commitment, does not place arbitrary power in an executive officer, preventing a judicial hearing on the question of his restoration to sanity.

Appeal from a judgment of the superior court for Spokane county, Webster, J., entered June 14, 1927, upon a trial and acquittal of assault by reason of insanity, and a special finding that accused is unsafe to be at large. Affirmed.

*S. Edelstein,* for appellant.

*Chas. W. Greenough* and *Louis F. Bunge,* for respondent.

HOLCOMB, J.—Appellant, having been prosecuted for the crime of assault in the first degree, pleaded not guilty, and also, by counsel, filed a written plea of mental irresponsibility in accordance with Rem. Comp. Stat., § 2174 [P. C. § 9294]. The jury found defendant

[1]Reported in 262 Pac. 970.

not guilty by reason of insanity, or mental irresponsibility, existing at the time of the assault. By special interrogatories submitted by the court to the jury, as required by Rem. Comp Stat., § 2175 [P. C. § 9295], the jury found: First, that appellant committed the offense charged; second, that they acquitted him because of his mental irresponsibility at the time of the assault; third, that the mental irresponsibility did not continue, and did not exist at the time of the verdict; and fourth, that there was likelihood of a relapse or recurrence of such mental irresponsibility, and that appellant was not a safe person to be at large.

Upon the entry of the verdict, appellant moved for discharge from custody, upon the ground of having been found not guilty, because of mental irresponsibility, and the jury having found that, at the time of the trial he was sane, and as his mental irresponsibility did not exist at the time of the trial, he was entitled to his discharge; and upon the further ground that special finding No. 4 was void and of no effect, in so far as the same affected his right to immediate discharge and release, for the reason that § 4, ch. 30, Laws of 1907, p. 33, Rem. Comp. Stat. § 2176, under which the special finding No. 4 was made, was unconstitutional and void, because it deprived appellant of his liberty without due process of law.

The motion for discharge was denied by the court, to which appellant excepted.

On the same day, the court entered a judgment, in accordance with Rem. Comp. Stat., § 2176 [P. C. § 9296], committing appellant to the ward for criminal insane in the Washington state penitentiary until discharged as provided by law. He was thereupon so committed.

On appeal, appellant contends that the finding of the jury, under which he was committed to the in-

sane ward of the penitentiary, is void, for the following reasons:

(1.) Because his commitment was made without due process of law, no notice having been given to him nor hearing had, nor an opportunity to defend on the question of the likelihood of a recurrence in the future of his mental irresponsibility, or that it was dangerous for him to be at large;

(2.) Upon the ground that the act, which provides for the method by which a person so committed can obtain a hearing for his discharge from the penitentiary, is unconstitutional and void, because it places within the arbitrary control of officers under the control of the executive department whether or not one so situated can ever apply to a judicial tribunal for a hearing on his right to be discharged from custody;

(3.) Upon the further ground that appellant, having been acquitted of the crime charged and having been found sane and mentally responsible at the time of the trial, was entitled to his immediate discharge, and could not be apprehended or taken into custody and committed to a penal institution, without some subsequent act on his part, or some altered condition of his mental responsibility, and the determination thereof after a charge was filed and a hearing had thereon.

Counsel for appellant ably and very confidently argues, in support of these contentions, grounding most of the argument, first, upon the premise that a person found to be sane must be presumed to continue to be sane until the contrary is established by judicial proceedings, after notice and an opportunity given to be heard. 32 C. J. 756, is quoted as follows:

"Sanity, when once shown to exist, like any other fact or status of a continuing nature, is presumed to continue."

It is then asserted that the fact of the sanity of the appellant, at the time of the trial, having been established by the verdict of the jury, he was then entitled to his immediate discharge, urging, as a fundamental rule of law, that no person, sane and mentally competent at the time of trial, can be committed to a penal institution as a criminally insane person, as defined in the act, without any other inquisition being had, in which the issue was directly raised to determine whether or not the accused has lost his sanity or is dangerous to be at large, by having committed some overt act which had forfeited his right to be at large.

Cases and texts are cited and relied upon, to the effect that the right of a person acquitted of crime on the ground of insanity to be discharged from custody, on his restoration to sanity, is without question; that, upon that fact being once established, it is the duty of the court to immediately discharge him from custody.

[1] Our statute, § 2174, *supra,* provides that, when one desires to interpose a defense of insanity or mental irresponsibility on behalf of one charged with a crime, his counsel, or someone authorized by law to appear and act for him, shall, at the time of pleading to the information, file a plea in writing, setting up (1) his insanity or mental irresponsibility at the time of the commission of the crime charged; (2) whether the insanity or mental irresponsibility still exists; or (3) whether the defendant has become sane or mentally responsible between the time of the commission of the crime and the time of the trial.

Section 2175, *supra,* provides that, if the plea of insanity or mental irresponsibility be interposed, and evidence upon that issue be given, the court shall instruct the jury, when giving the charge, that in case a verdict of acquittal of the crime charged be returned, they shall also return special verdicts finding (1)

whether the defendant committed the crime, and if so, (2) whether they acquitted him because of his insanity or mental irresponsibility at the time of its commission, (3) whether the insanity or mental irresponsibility continues and exists at the time of the trial, and (4) whether, if such condition of insanity or mental irresponsibility does not exist at the time of the trial, there is such likelihood of a relapse or recurrence of the insane or mentally irresponsible condition that the defendant is not a safe person to be at large. Forms for the return of the special verdicts shall be submitted to the jury with the forms of the general verdicts.

When appellant interposed his special plea, he raised every issue that is covered by the two foregoing statutes, including the issue of whether the condition of insanity, or mental irresponsibility, if not existing at the time of the trial, was likely to recur, and, therefore, he would not be a safe person to be at large.

While it is a true and salutary rule that due process of law requires

". . . that a party shall be brought into court and have an opportunity when there to prove any fact which, according to the constitution and the usages of the common law, would be a protection to him or his property, and that by the law of the land is meant the general law, a law which hears before it condemns, which proceeds upon an inquiry and renders a judgment only after trial,"

there was no denial of the benefits of that rule in this case. The statutes in question do no violence thereto.

No statement of facts has been brought here by appellant, but we must assume that every fact, tending to show the condition of appellant at the time of the commission of the assault, his subsequent condition, and the likelihood of a relapse or recurrence of the mentally irresponsible condition, so that it could be determined whether he was a safe person to be at

large, that was possible and competent to adduce, was adduced, for the consideration of the jury. There was no denial of due process of law and the benefit of trial by a jury in this case, because appellant himself raised the issues that were determined in the trial and had the benefit of every protection accorded by the constitutions and the law of the land.

The contentions of appellant have, for the most part, been settled by our precedents. The same contentions, in large measure, were made by the petitioner in an application for a writ of *habeas corpus* in *In re Brown,* 39 Wash. 160, 81 Pac. 552, 109 Am. St. 868, 4 Ann. Cas. 488, 1 L. R. A. (N. S.) 540. In that case, it was held that one accused of murder, who submits a plea of insanity to trial by jury and is found not guilty by reason of insanity, may be confined in the county jail, until the further order of the court, and is not deprived of his liberty without due process of law, where he does not allege a restoration of sanity, since he was accorded a fair trial, and the presumption of insanity, once found, continues; and since the law does not prevent a judicial investigation as to restored sanity. It is further held that the state has power to protect its people from dangerous insane persons, by providing, after a full hearing, for their confinement in a prison while the condition continues, and that such confinement does not violate the constitutional inhibition of cruel punishment.

We also said:

"Has the petitioner been deprived of due process of law in the premises? He was tried before a jury to whom he himself submitted the issue that he was insane when the crime was committed. He was permitted to fully introduce his evidence upon that subject, and the jury were instructed as to their duty in the premises. The verdict returned was in his favor upon the issue which he tendered, and he was there-

fore accorded due process of law and the right of trial by jury upon that subject. The jury found that he was insane, and it was the manifest duty of the court to enter some kind of a judgment upon the finding of the jury. The petitioner erroneously assumes that it was a judgment entered in a new and original proceeding, without due process of law and without opportunity for a hearing. It was, however, a judgment rendered upon the verdict of a jury, which had been regularly returned in a proceeding wherein all constitutional rights had been accorded. Should it have been a judgment of discharge, according to petitioner his liberty? He does not allege that he is now sane. The solemn verdict of a jury, after due trial, establishes that he was insane when the killing occurred."

In the present case, the appellant was found sane at the time of the trial, and alleges, of course, that he is still sane. But the jury also said, after due trial, that his tendency to violence rendered him dangerous to be at large, and that he should be confined as a dangerously insane person. All these were questions of fact to be decided by the jury. *State v. Strasburg,* 60 Wash. 106, 110 Pac. 1020, Ann. Cas. 1912B 917, 32 L. R. A. (N. S.) 1216.

There is nothing contrary to these conclusions to be found in *State ex rel. Thompson v. Snell,* 46 Wash. 327, 89 Pac. 931, 9 L. R. A. (N. S.) 1191, and *State v. Craig,* 52 Wash. 66, 100 Pac. 167. Under all these decisions, appellant was accorded a trial upon issues submitted by himself, according to the law of the land, and there was no violation of the due process clauses of the Federal or state constitution.

[2] Respecting the contention, that the act in question, in providing that appellant can only obtain his discharge by first obtaining a certificate from the physician of the state penitentiary, which places arbitrary power in that officer and the executive department, under whose control he is, so that appellant can never

procure a judicial hearing on the question of his sanity or insanity, is unconstitutional we find no merit in it.

In the case of *Wagner v. White,* 38 D. C. App. 354, the same contention was made. The court of appeals rejected the contention, saying:

"The provision that the superintendent shall certify to the restoration of the sanity of the prisoner, and that he may then be brought before the court for sentence, is founded in the presumption that the superintendent will perform the duties of his office fairly and properly, and is a reasonable one. But assuming that, in instances, the officer might not perform his duty, and might not certify to the restoration of the prisoner's sanity, it does not follow that the situation is without remedy."

It is so here. There is nothing in the law that prevents appellant making his application, at any time, to be restored to liberty on the ground of a restoration to sanity and from danger of relapse and aptitude to recur to violence, and for a hearing thereon in some judicial tribunal. See, also, *State v. Garrison,* 137 Wash. 577, 243 Pac. 373.

We are convinced that appellant was properly committed under the findings of the jury and the judgment of the court, and the judgment is affirmed.

MACKINTOSH, C. J., MAIN, FULLERTON, and ASKREN, JJ., concur.